Leo M. SHORE, Plaintiff-Appellant,

v.

PARKLANE HOSIERY COMPANY, INC.,
Herbert N. Somekh, Denise D. Somekh,
Herbert N. Somekh, as Trustee of trusts
for the benefit of his children, Charles
B. Yaffe, Beulah Yaffe, David N. David,
Neil B. Persky, Carl Appel, Esther Ap-
pel, Florence Mukamel, Arthur Gold,
Stanley Kuschner and Harold Stone, De-
fendants,

Parklane Hosiery Company, Inc., and
Herbert N. Somekh,
Defendants-Appellees.

No. 49, Docket 77–7163.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1977.

Decided Nov. 1, 1977.

Samuel K. Rosen, New York City (Stuart D. Wechsler, Patricia I. Avery, Atty., Kass, Goodkind, Wechsler & Gerstein, New York City, of counsel), for plaintiff-appellant.

Irving Parker, New York City (Joseph N. Salomon, Norman Trabulus, Jacobs Per-singer & Parker, New York City, of counsel), for defendants-appellees.

Before MANSFIELD and TIMBERS, Circuit Judges, and DOOLING, District Judge.*

MANSFIELD, Circuit Judge:

This appeal raises the important question of whether a party who has had issues of fact determined against it after a full and fair opportunity to litigate them in a non-jury trial of an action against it may, in a different suit against it by another person, obtain a jury trial of the same issues of fact arising out of the same transaction. We hold that it is collaterally estopped from doing so.

In November 1974 the present class action was commenced on behalf of stockholders of Parklane Hosiery Company, Inc. ("Parklane") against Parklane and 12 of its officers, directors and stockholders, alleging that a proxy statement issued by them on September 24, 1974, contained materially false and misleading statements in violation of §§ 10(b), 13(a), 14(a) and 20(a) of the Securities Exchange Act of 1934 as amended, and rules and regulations promulgated thereunder. Parklane had been a publicly-held company engaged in the retail sale of women's apparel, 71.68% of whose outstanding shares were controlled by the defendants. In furtherance of a proposed merger whose purpose was to convert Parklane into a privately-owned company controlled entirely by defendants, they caused a proxy statement to be sent to Parklane's stockholders in September advising that on October 14, 1974, there would be a meeting to consider the proposal. Following the meeting the plan was consummated. Parklane merged with New PLHC Corp., a private company controlled by defendants, and each of the minority stockholders, including plaintiff, was paid $2 per share for his holdings, subject to the right of any dissenting stockholder to obtain an appraisal pur-

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

suant to the New York Business Corporation Law.

The Amended Complaint alleges that the proxy statement

(1) failed to disclose that the purpose of the merger was to help defendant Herbert N. Somekh, Parklane's president, to meet his personal obligations rather than to further any valid corporate objective;

(2) failed, in referring to Parklane's termination of negotiations with respect to its lease of certain property from the Federal Reserve Board of New York, to reveal that continuation of the negotiations could result in substantial financial benefits to Parklane; and

(3) failed to disclose, in advising that two appraisers had been employed by Parklane to determine the fair value of its stock, that the appraisers had not been furnished with sufficient information to prepare a true and complete valuation.

It further alleges that the distribution of the proxy statement was part of a fraudulent scheme giving rise to liability to the plaintiff and other members of the class pursuant to Rule 10b–5 of the Securities Exchange Act of 1934. The complaint seeks damages, a rescission of the merger, costs and such other relief as might be granted by the court.

In May 1976, about a year and a half after commencement of the present action, the Securities and Exchange Commission ("SEC") brought suit in the Southern District of New York against Parklane and Somekh, alleging that their issuance of the September, 1974, proxy statement violated § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and §§ 10(b), 13(a), and 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(a) and 78n(a), and rules promulgated thereunder. The SEC charged that the proxy statement was materially false and misleading in essentially the same respects as those that had been alleged by the plaintiff in this action. The SEC sought equitable relief, including the appointment of a special counsel to determine the fair value of the Parklane shares held by the minority stockholders eliminat-

ed by the merger and an injunction against further violations by the defendants of the antifraud, proxy and reporting provisions of the federal securities laws. After a trial in which the SEC's application for preliminary injunctive relief was consolidated with trial of the action on the merits pursuant to Rule 65(a), F.R.Civ.P., and both Parklane and Somekh were accorded a full and fair opportunity to adduce evidence and cross-examine witnesses produced by the SEC, Judge Kevin T. Duffy of the Southern District of New York on November 9, 1976, filed a 26-page opinion which constituted his findings of fact, conclusions of law and final order in the case.

In his decision Judge Duffy, after noting the pendency of the present action and analyzing the evidence before him, found (1) that the September 24, 1974, proxy statement failed to disclose that the "overriding purpose for the merger was to enable Somekh to repay his personal indebtedness," (2) that the proxy statement was also false in stating that there were "no negotiations at present" with the Federal Reserve Board of New York with respect to cancellation of Parklane's lease of property from the Board when in fact negotiations were continuing in early October 1974 and the Federal Reserve Board's representative had agreed to recommend payment of $1,200,000 to compensate for the loss caused by the cancellation, of which $300,000 would be payable to Parklane as its share, and (3) that the proxy statement was misleading in that it failed to disclose that the appraisers, Thomson & McKinnon, Auchincloss & Kohlmeyer, Inc., had not been informed of certain facts pertinent to their evaluation of Parklane shares, including Somekh's plans to use $1 million of corporate assets to reduce his personal indebtedness, his intentions to sell certain real property to Parklane and of the negotiations with the Federal Reserve Board with respect to cancellation of the leasehold. Judge Duffy further found, on the basis of his detailed discussion of the evidence before him, that each of these three false statements or non-disclosures was material under the standard estab-

lished by the Supreme Court in *TSC Industries, Inc. v. Northway,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). See also *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir. 1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

Although the district court concluded in the SEC case that the defendants had violated § 14(a) of the Exchange Act of 1934, it decided that the requested relief—an injunction and appointment of a special counsel to determine the fair value of the Parklane shares—would not be appropriate and limited relief to a direction that Parklane amend its prior filings with the SEC to correct the misstatements and non-disclosures and file a Form 10K for 1975, if one had not been filed. Judge Duffy's decision was affirmed by us on July 8, 1977, see 558 F.2d 1083, in an opinion specifically upholding each of his findings and his determination that each of the misstatements or omissions was material.

On the basis of the district court's November 9, 1976, decision plaintiff in the present action moved on November 24, 1976, for summary judgment against Parklane and Somekh, contending that by reason of Judge Duffy's detailed findings of fact, those two defendants were collaterally estopped from asserting that any genuine issues of material fact regarding liability remained for trial. The motion was denied by Judge Inzer B. Wyatt in a cryptic opinion as follows: "The within motion is denied. *Rachal v. Hill,* 435 F.2d 59 (5th Cir. 1970). So ordered."

In *Rachal* the Fifth Circuit was faced with the question before us—whether corporate officers who have had issues of fact determined against them in a non-jury trial of an SEC suit for injunctive relief are collaterally estopped from relitigating those issues before a jury in a subsequent class and derivative action for damages brought by stockholders. The court, conceding that mutuality of parties was no longer a prerequisite for collateral estoppel, nevertheless held that the Seventh Amendment right to a jury trial of contested issues of fact survived any prior non-jury adjudica-

tion, relying principally on the Supreme Court's decision in *Beacon Theatres Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

Following his decision Judge Wyatt certified his order pursuant to 28 U.S.C. § 1292(b). Since it involved a controlling question, we permitted an interlocutory appeal in the interests of avoiding a wasteful and unnecessary trial, see F.R.A.P. 5(a). We reverse.

*Discussion*

Absent a demand for a jury trial in the present action, it is clear that Parklane and Somekh would be collaterally estopped from relitigating the issues resolved against them in *SEC v. Parklane Hosiery Co., Inc.,* 422 F.Supp. 477 (S.D.N.Y.1976), *affd.,* 558 F.2d 1083 (2d Cir. 1977). The issues in both proceedings are identical, and the defendants were accorded a full and fair opportunity to try those issues in the prior proceeding.

■ That the prior proceeding was equitable in nature has never been considered a ground for denying collateral estoppel or res judicata effect in a court of law to the findings or judgment of a court of equity, even before merger of the law and equity systems, *Katchen v. Landy,* 382 U.S. 323, 337–38, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Brady v. Daly,* 175 U.S. 148, 159, 20 S.Ct. 62, 44 L.Ed. 109 (1899); *Smith v. Kernochen,* 48 U.S. (7 How.) 198, 12 L.Ed. 666 (1849); *Crane Co. v. American Standard, Inc.,* 490 F.2d 332, 343 (2d Cir. 1973); see Shapiro and Coquillette, *The Fetish of Jury Trial in Civil Cases, A Comment on Rachal v. Hill,* 85 Harv.L.Rev. 442, 450–54 (1971); Restatement of Judgments § 68, Comment j (1942). Although the plaintiffs in the two proceedings differ and mutuality of parties was at one time a prerequisite for application of the doctrine of collateral estoppel, see *Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 225 U.S. 111, 127, 32 S.Ct. 641, 56 L.Ed. 1009 (1912), this court in *Zdanok v. Glidden Co.,* 327 F.2d 944 (2d Cir. 1964), following the lead of Justice Traynor in *Bernhard v. Bank of America,* 19 Cal.2d

807, 122 P.2d 892 (1942), dispensed with mutuality as a requirement, taking the view that a requirement of complete identity of parties serves no purpose as long as the person against whom the findings are asserted or his privy has had a full and fair opportunity to litigate the identical issue in the prior action. Any lingering doubt in the matter was eliminated by the Supreme Court's decision in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), where the Court, citing *Zdanok* and *Bernhard* with approval, unanimously concluded that a determination of patent invalidity against a party in prior litigation was binding against it in a subsequent suit to enforce the patent against others.[1]

■ Turning to the question of whether, notwithstanding the doctrine of collateral estoppel, the defendants are entitled to relitigate the same issues of fact before a jury, it must be recognized that the Seventh Amendment[2] does not create new jury trial rights. It simply preserves the right to a jury trial as it existed in 1791, 5 Moore, Federal Practice ¶ 38.05[5], at 82–83 (2d ed. 1974). Moreover, the right to a jury trial exists only in "suits at common law" rather than those in equity, see *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), and only with respect to disputed issues of fact. *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319–20, 23 S.Ct. 120, 47 L.Ed. 194 (1902). Where no genuine issue of material fact exists, the court may, without violating Seventh Amendment rights, grant summary judgment pursuant to Rule 56, F.R.Civ.P. E. g., *Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d

1199, 1203 (9th Cir. 1974); *United States v. Stangland*, 242 F.2d 843, 848 (7th Cir. 1957). Similarly the court may, consistently with the Seventh Amendment, withdraw a case from the jury and order the entry of a directed verdict where the evidence, viewed most favorably to the party against whom the judgment is entered, would not be sufficient to support a verdict in that party's favor. Rule 50, F.R.Civ.P.; *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). Failure to make a prompt demand for a jury constitutes a waiver of the right to one. Rule 38(d), F.R.Civ.P.

■ Since the Seventh Amendment preserves the right to a jury trial only with respect to issues of fact, once those issues have been fully and fairly adjudicated in a prior proceeding, nothing remains for trial, either with or without a jury. The party seeking the retrial has already exercised his right to be heard on the issues and to cross-examine witnesses with respect to them. The interests of finality, certainty and economy of judicial resources then come into play to preclude his relitigating the same issue a second or third time, with the possibility of inconsistent findings, absent some showing of fundamental unfairness in the prior proceeding or some unusual circumstances such as fraud that would render inappropriate the application of the doctrine of collateral estoppel. See *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1876).

---

1. Prior to *Blonder-Tongue*, the Supreme Court in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), had held that when an administrative agency acts in a judicial capacity, collateral estoppel effect may be given to its findings of fact against the respondent rather than require relitigation in subsequent legal proceedings, 384 U.S. at 421–22, 86 S.Ct. 1545. This principle has since been applied to give such effect to agency determinations in later private damage suits against the respondent. See *H. L. Robertson & Assoc. Inc. v. Plumbers Local No. 519*, 429 F.2d 520, 521 (5th Cir. 1970); Comment,

Use of Government Judgments in Private Antitrust Litigation: Clayton Act Section 5(a), Collateral Estoppel and Jury Trial, 43 U.Chi.L.Rev. 338, 356 (1976).

2. The Seventh Amendment provides:
   "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

Apparently accepting these fundamental principles, appellees rely, as did the district court, on the Fifth Circuit's decision in *Rachal v. Hill, supra,* for the proposition that they are nevertheless entitled to a second trial of issues once determined, this time before a jury. In reaching that conclusion the court in *Rachal* rested its decision almost entirely upon its interpretation of *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). That case, however, did not deal with the question of whether a party has a right under the Seventh Amendment to a jury retrial of issues already adjudicated in a non-jury proceeding, but with the scope of a judge's discretion in determining the order or sequence in which legal and equitable claims joined in the same action under the liberal federal rules, which merge law and equity, see Rule 18, F.R.Civ.P., and mandate the assertion of compulsory counterclaims, see Rule 13, F.R.Civ.P., must be tried. Plaintiff in *Beacon Theatres* brought an action seeking a declaratory judgment and injunctive relief against the institution of a treble damage antitrust suit, to which the defendant responded by interposing a compulsory counterclaim for treble damages raising the same issues and demanding a jury. Were the equitable claims tried first to the court, the defendant would have been precluded under the doctrine of collateral estoppel from relitigating issues common to the two claims in a trial before a jury to which the defendant was entitled under the Seventh Amendment. Recognizing this alternative, the Supreme Court held that it was an abuse of discretion for the district court to schedule the equity claims first for trial.

The Court in *Beacon Theatres* was not required to face the question of whether, once there has been a prior non-jury trial of the issues without objection in an independent equity proceeding, as was the case here, the losing party may then demand a jury retrial of the same issues. However, as we noted in *Crane Co. v. American Standard, Inc.,* 490 F.2d 332, 342 (1973), the Supreme Court's concern over which of the claims should first be tried, rather than evidencing support for such procedure, was based on the assumption that unless the jury trial was held first the findings in the non-jury proceeding would be conclusive. Indeed, even with respect to the order of presentation of legal and equitable claims, Justice Black indicated in *Beacon Theatres* that there might be some exceptional instances where a court, in the exercise of its discretion, would be justified in permitting the issues to be resolved first in the equity proceeding even though this could result in precluding a jury trial, stating:

> "If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." 359 U.S. at 510, 79 S.Ct. at 956 (footnote omitted).

■ Thus *Beacon Theatres* simply asserts that where parties join legal and equitable claims arising out of the same transaction, the court must schedule the sequence of trials to protect a party's constitutional right to a jury trial.[3] However, we do not view the decision as compelling the result reached in *Rachal.* If anything, *Beacon Theatres* implicitly confirms the long-accepted principle that a non-jury adjudication of issues asserted in an equitable claim will collaterally estop a later jury trial of the same issues presented by the same party in a legal claim. Had it not been for that basic assumption the Supreme Court

---

**3.** Three years later the Court extended the principles of *Beacon Theatres* to hold in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), that where a plaintiff joined demands for injunctive relief and damages in one suit, the defendant who made a timely demand for a jury could not be deprived of his constitutional right to a jury trial by earlier resolution of the issues with respect to the equitable claim.

would not have been concerned about the order in which the legal and equitable claims were to be tried, since the defendant would then have been guaranteed a jury trial of the counterclaim regardless of the outcome of the equitable claim. As Justice Black noted in his majority opinion, if the common issues were first resolved by the district court upon a non-jury trial of the complaint for declaratory relief

> "the effect of the action of the District Court could be, as the Court of Appeals believed, 'to limit the petitioner's opportunity fully to try to a jury every issue which has a bearing upon its treble damage suit,' for determination of the issue of clearances by the judge might 'operate either by way of res judicata or collateral estoppel so as to conclude both parties with respect thereto at the subsequent trial of the treble damage claim.' [Beacon Theatres v. Westover, 9 Cir.,] 252 F.2d 864 at 874." 359 U.S. at 504, 79 S.Ct. at 953.

This underlying premise was equally implicit in *Dairy Queen Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Meeker v. Ambassador Oil Corp.,* 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261 (1963). It was later confirmed in *Katchen v. Landy,* 382 U.S. 323, 336–40, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), where the Court upheld the right of a bankruptcy trustee to recover a preference through a summary proceeding, for which a jury is not required, over the objection that this procedure would deprive the claimant of his right to a jury trial, to which he would be entitled under the Seventh Amendment in a plenary proceeding under § 60 of the Bankruptcy Act, 11 U.S.C. § 96; *Schoenthal v. Irving Trust Company,* 287 U.S. 92, 94–95, 53 S.Ct. 50, 77 L.Ed. 185 (1932). *Katchen* stated:

> "In practical effect, the denial of a jury trial would be no less were the bankrupt-

cy court merely to determine the existence and amount of the preference, since that determination would be entitled to *res judicata* effect in any subsequent plenary action. And we have held that equity courts have power to decree complete relief and for that purpose may accord what would otherwise be legal remedies.

> \* \* \* \* \* \*

> "For, as we have said, determination of the preference issues in the equitable proceeding would in any case render unnecessary a trial in the plenary action because of the *res judicata* effect to which that determination would be entitled.
> . . . Both *Beacon Theatres* and *Dairy Queen* recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim." 382 U.S. 338, 339–40, 86 S.Ct. 477–478.

█ In view of the limited scope of the Supreme Court's decision in *Beacon Theatres* and its inherent respect for the doctrine of collateral estoppel, we do not view the case, either in logic or in spirit, as requiring us to hold that after a litigant has had a full and fair non-jury trial of issues he may always invoke the Seventh Amendment to obtain a second trial of the same issues. To so hold would violate basic principles of fairness, finality, certainty, economy in utilization of judicial resources,[4] avoidance of possibly inconsistent results, and achievement of the "just, speedy and inexpensive determination of every action," Rule 1, F.R.Civ.P.[5] Were there any doubt about the matter, it should in any event be resolved against the defendants in this case for the reason that, although they were fully aware of the pendency of the present suit throughout the non-jury trial of the SEC case, they made no effort to protect

---

4. Although plaintiffs have joined with Parklane and Somekh in the present suit other persons who were not parties to the SEC proceeding, they advised the district court that, in the event their summary judgment motion was granted, they would drop their suit against the others, terminating the litigation altogether except for damages.

5. As Justice White observed in *Blonder-Tongue, supra,* the fundamental question is "whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue," 402 U.S. at 328, 91 S.Ct. at 1442, a question which the Court answered in the negative.

their right to a jury trial of the damage claims asserted by plaintiffs, either by seeking to expedite trial of the present action or by requesting Judge Duffy, in the exercise of his discretion pursuant to Rule 39(b), (c), F.R.Civ.P.,[6] to order that the issues in the SEC case be tried by a jury or before an advisory jury. Thus, to the extent that foreseeability of the possible use of collateral estoppel in a later private action for damages is a factor in determining whether application of estoppel principles would be unjust,[7] see *The Evergreens v. Nunan,* 141 F.2d 927, 929 (2d Cir.), *cert. denied,* 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944), no unfairness exists in the present case, because the defendants, being parties to two suits pending at the same time, were fully aware of the estoppel consequences.

Notwithstanding the Supreme Court's respect for the doctrine of collateral estoppel, defendants urge that their right to a jury trial under the Seventh Amendment must be preserved on historical grounds. Frankly conceding in their brief that if there had been mutuality of parties "the application of collateral estoppel could result in the loss of a jury trial right" (Appellees brief p. 15), they argue that since principles of non-mutual estoppel had not yet evolved in 1791, they must be disregarded in construing a constitutional amendment which preserves the right to a jury trial at common law as it then existed. In support of this position they point to *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), where the Court looked to custom governing the right to a jury in 1791 to determine wheth-

er a personal injury plaintiff could be forced to accept a court's increased award of damages after a jury verdict had been found inadequate or whether the plaintiff was entitled to a new jury for the assessment of damages as a matter of constitutional right. Such a strict historical approach to the Seventh Amendment, which would freeze the jury trial at its 1791 level—no more, no less—has been somewhat weakened by recent pronouncements. See, e. g., *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), where the Court found that because of the "extensive and possibly abstruse historical inquiry" involved, such an analysis is "most difficult to apply." 396 U.S. at 538, n. 10, 90 S.Ct. at 738. The inquiry into pre-1791 practice is complicated by the paucity of precedent and the merger of law and equity, see The Supreme Court, 1969 Term, 84 Harv.L.Rev. 1, 175–76; McCoid, Procedural Reform and The Right to a Jury Trial: A Study of *Beacon Theatres Inc. v. Westover,* 116 U.Pa.L.Rev. 1 (1967). Since the term "Suits at common law" as used in the Seventh Amendment does not embrace equitable claims, it becomes necessary to determine, with respect to rights and remedies arising out of statutes that were not in existence in 1791, what the closest common law analogue might have been, which is often a tenuous procedure at best. See Note, *United States v. J. B. Williams Co.,* 498 F.2d 414 (2d Cir. 1974), 88 Harv.L.Rev. 1035, 1041–42 (1975); Note, Congressional Provision for Nonjury Trial under the Seventh Amendment, 38 Yale L.J. 401, 418 (1973). As the

---

**6.** Rule 39 provides in pertinent part:

"(b) *By the Court.* Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

"(c) *Advisory Jury and Trial by Consent.* In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial

with a jury whose verdict has the same effect as if trial by jury had been a matter of right."

**7.** It has been observed that

"Since one of the major functions of injunctive actions brought by the Commission is the alerting of potential private plaintiffs to actionable violations of the securities laws, the defendants should be well aware of the possibility of multiple private suits at a later date. Thus, it is unlikely that the defendants would regard the injunction as unimportant and therefore fail either to defend the first suit vigorously or to appeal an adverse judgment." (Footnotes omitted). Comment: The Effect of SEC Injunctions in Subsequent Private Damage Actions—*Rachal v. Hill,* 71 Colum.L.Rev. 1329, 1338–39 (1971).

Supreme Court said more recently in *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), in determining whether a Sixth Amendment right to trial by jury existed in criminal contempt proceedings, "the ultimate question is not whether the traditional doctrine is historically correct but whether the rule that criminal contempts are never entitled to a jury trial is a necessary or an acceptable construction of the Constitution. Cf. *Thompson v. Utah,* 170 U.S. 343, 350, 18 S.Ct. 620, 622, 42 L.Ed. 1061 (1898)." 391 U.S. at 200 n. 2, 88 S.Ct. at 1481.

In any event, application of a strict historical standard would not mandate a jury retrial of the present case, which is distinguishable in significant respects from *Dimick.* That case involved a suit for damages for personal injuries of the common garden-variety type that had long existed at common law prior to 1791 and had always been triable by jury. Moreover, the pre-1791 law clearly prohibited the Court from increasing a jury award in such a case, 293 U.S. at 482, 55 S.Ct. 296. In the present case, on the other hand, we find no 18th century counterpart or analogue to an SEC proceeding for injunctive relief or a stockholders' suit based on an implied right of action created by antifraud provisions of federal securities laws. We therefore cannot, by reference to 1791 precedents, determine what jury trial and collateral estoppel rules would have been developed or applied by common law courts of that period in such suits if these statutes of recent vintage, which contemplated both public and supplementary private enforcement, see *J. I. Case v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), had been in effect. Had the 1791 courts been faced with the question, perhaps they, like their 20th century successors, would have decided that the statutory purposes would best be facilitated by permitting private plaintiffs to utilize the SEC-obtained findings and by easing the mutuality requirement accordingly, giving collateral estoppel effect to such findings against a party who had had a full and fair trial of the issues in the case brought by the SEC rather than allow him a second trial before a jury. Moreover, in *Dimick* the

trial judge's determination regarding the inadequacy of the verdict (labelled a "compromise" by the Court) was not questioned, and because of its clear inadequacy the plaintiff there, unlike the defendants here, did not receive a fair first trial. Here, in contrast, there was nothing unfair or erroneous about the district court's findings and decision in the SEC proceeding, which have been affirmed by us. See 558 F.2d 1083 (2d Cir. 1977).

In view of these obvious limitations upon a historical inquiry, including the inability to determine what would have been the precise 1791 boundaries with respect to laws that were not then in existence, much less dreamed of, and the willingness of the law courts even in 1791 to respect decrees and findings in equity, see Shapiro and Coquillette, The Fetish of Jury Trial in Civil Cases: A Comment on *Rachal v. Hill,* 85 Harv.L.Rev. 442, 451, 454–55 (1971), we should not be confined to a rigid strait-jacket merely because of the lack of a common law analogue and the absence of any 1791 authority for extension of the equitable doctrine of collateral estoppel to the present case.

Our disagreement with the Fifth Circuit's decision in *Rachal* should come as no surprise to those familiar with some of our recent decisions bearing on the question presented. For instance, in *Crane Co. v. American Standard, Inc.,* 490 F.2d 332 (2d Cir. 1973), we held that a decree in equity had "preclusive effect in a subsequent action at law between the same parties," 490 F.2d at 343. Although *Crane* did not involve non-mutual estoppel, Judge Friendly intimated that the same principles would apply in a non-mutual case to estop the party which had had a full and fair opportunity to litigate the same issues in an equity proceeding, citing with approval the Note by Shapiro and Coquillette, *supra,* which had been highly critical of *Rachal* and stating that "we are not at all sure that *Rachal* was correctly decided," 490 F.2d at 343 n. 15. Any doubt on this score was removed in *Goldman, Sachs & Co. v. Edelstein,* 494 F.2d 76 (2d Cir. 1974), where, in a mandamus proceeding involving several actions, each of which had asserted the same

basic claims by different plaintiffs against a common defendant, we directed that an action in which a jury had been demanded be tried first, "[i]n order to foreclose the potential destruction of the defendant's right to a jury trial" which would occur if one of the non-jury cases presenting the same issues first went to trial and resulted in findings adverse to the defendants. In the present case that event has occurred, resulting in the destruction by collateral estoppel of the defendants' right to a jury trial of the same issues.[8]

For these reasons we reverse the order of the district court and remand the case to it for further proceedings not inconsistent with the foregoing.

---

**8.** Nor is Judge Oakes' dissent in *Goldman, Sachs & Co. v. Edelstein, supra,* inconsistent with the result reached by us here since Goldman, Sachs took timely steps to protect its right to a jury trial from being destroyed through collateral estoppel by objecting to trial of the non-jury suits until the jury actions against it had first been tried. The dissent was persuaded that under such circumstances collateral estoppel effect should not be given to the findings in a non-jury case if it first proceeded to trial. In the present case, however, no such timely objection was voiced or other steps taken by Parklane or Somekh to protect their right to a jury trial of the issues before the non-jury SEC proceeding went to trial.