**WESTCHESTER DAY SCHOOL,**
**Plaintiff,**

**v.**

**VILLAGE OF MAMARONECK,** the Board of Appeals of the Village of Mamaroneck, Mauro Gabriele, George Mgrditchian, Peter Jackson, Barry Weprin and Clark Neuringer in their official capacity as members of the Board of Appeals of the Village of Mamaroneck, and Antonio Vozza in his official capacity as a former member of the Board of Appeals of the Village of Mamaroneck, **Defendants.**

**No. 02 CIV. 6291(WCC).**

United States District Court,
S.D. New York.

April 1, 2005.

Zoning Board of Appeals of the Village of Mamaroneck (the "ZBA"), and Antonio Vozza, James Gaita, George Mgrditchian, Barry Weprin and Clark Neuringer, in their official capacity as members of the ZBA (collectively, the "defendants"). Plaintiff seeks relief under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.* ("RLUIPA"), alleging, *inter alia,* that defendants imposed a substantial burden on the free exercise of religion by denying its application to construct a new school building and to renovate and improve other existing buildings on the WDS campus.[1] This matter is currently before the Court on defendants' motion for leave to make a demand for a jury trial pursuant to FED. R. CIV. P. 38(b) or, in the alternative, for the Court to order a jury trial pursuant to FED. R. CIV. P. 39(b). For the reasons stated hereinafter, defendants' motion is denied.

Morrison & Foerster LLP, Attorneys for Plaintiff, New York, NY, Jack C. Auspitz, Esq., Joel C. Haims, Esq., Of Counsel.

Bernstein Liebhard & Lifshitz, LLP, Attorneys for Plaintiff, New York, NY, Stanley D. Bernstein, Esq., Of Counsel.

Thacher Proffitt & Wood LLP, Attorneys for Defendants, White Plains, NY, Kevin J. Plunkett, Esq., Of Counsel.

The Law Office of Joseph C. Messina, Attorneys for Defendants, Mamaroneck, NY, Joseph C. Messina, Esq., Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Westchester Day School ("WDS") commenced this action against defendants the Village of Mamaroneck, the

## BACKGROUND

The facts of this case are set forth extensively in our previous opinions, familiarity with which is presumed. *See Westchester Day Sch. v. Vill. of Mamaroneck,* 236 F.Supp.2d 349 (S.D.N.Y.2002) (Conner, J.); *see also Westchester Day Sch. v. Vill. of Mamaroneck,* 280 F.Supp.2d 230 (S.D.N.Y. 2003) (Conner, J.) (the "2003 Order"). The facts pertinent to the instant motion are as follows.

On August 7, 2002, WDS filed its Complaint alleging that defendants' decision to deny WDS's application to permit the construction of an additional building and to renovate and improve other existing buildings on its campus violated § 2(a)(1) of RLUIPA, 42 U.S.C. § 2000cc(a)(1). (Pl. Mem. Opp. Mot. Jury Trial at 1.) Specifically, the Complaint alleges that by denying WDS's request to amend its special permit, defendants violated RLUIPA by

---

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

implementing a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person or institution, without the justification of a compelling government interest furthered in the least restrictive manner. (*Id.*) On May 29, 2003, WDS filed an Amended Complaint. (Plunkett Aff. ¶ 5.) On June 23, 2003, defendants filed their Answer which included three affirmative defenses but no jury demand.[2] (*Id.*)

Also on June 23, 2003, WDS filed a motion for summary judgment which this Court granted in favor of WDS. *See generally Westchester Day Sch.*, 280 F.Supp.2d 230. However, on September 27, 2004, that ruling was vacated by the Second Circuit's decision in *Westchester Day Sch. v. Vill. of Mamaroneck*, 386 F.3d 183 (2d Cir.2004) (the "Second Circuit Decision") and the case was remanded to this Court for further proceedings. On October 22, 2004, this Court held a status conference during which defendants requested leave to amend the Answer to assert additional affirmative defenses. (Plunkett Aff. ¶ 12.) At the conference, WDS initially consented to defendants' request to amend the Answer, but withdrew their consent after defendants indicated that they planned to file a demand for a jury trial. (*Id.*) On November 5, 2004, with the Court's permission, defendants filed an Amended Answer with six additional affirmative defenses. The same day, defendants also filed the present motion for leave to file a jury demand or, in the alternative, for this Court to order a jury trial.

## DISCUSSION

### I. *Demand for Jury Trial—Rule 38(b)*

According to defendants, the Second Circuit Decision raised new issues of fact that were not entirely known to them when the original Answer was filed. (Defs. Mem. Supp. Mot. Jury Trial at 3.) Defendants contend that the Amended Answer contains affirmative defenses based on these allegedly new issues of fact and that they therefore have the right to seek a jury trial pursuant to Rule 38(b) with respect thereto. (*Id.* at 4.) WDS maintains that defendants' right to a jury trial was waived and has not been revived because they fail to raise any new issues of fact in the Amended Answer. (Pl. Mem. Supp. Mot. Jury Trial at 3–5.)

Rule 38 of the FED. R. CIV. P. provides in relevant part:

> (b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.... (d) Waiver. The failure of a party to serve a demand as required by ... [subsection(b) ] constitutes a waiver by him of trial by jury.

FED. R. CIV. P. 38(b), (d).

Defendants do not dispute that they failed to serve a timely jury demand by July 3, 2003, ten days from service of the original Answer. Rather, defendants contend that the present jury demand is timely because their right to a jury trial was revived when they filed the Amended Answer on November 5, 2004. (Defs. Mem. Supp. Mot. Jury Trial at 3–5.)

■ This Court recognizes that a jury demand may be made within ten days

---

**2.** The three affirmative defenses included in defendants' original Answer are: (1) the Complaint fails to state a claim upon which relief could be granted; (2) defendants are entitled to qualified and/or absolute immunity; and (3) the Court should decline to exercise supplemental jurisdiction over WDS's state law claims. (Ans. ¶¶ 100–102.)

after service of an amended pleading for new issues raised in the amended pleading; however, it is well-established that an amendment does not revive a previously waived right to demand a jury trial on issues already framed by the original pleadings. *State Mut. Life Assurance Co. of Am. v. Arthur Andersen & Co.*, 581 F.2d 1045, 1049 (2d Cir.1978); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310 (2d Cir.1973) (en banc); *Western Geophysical Co. of Am., Inc. v. Bolt Assocs., Inc.*, 440 F.2d 765, 769 (2d Cir.1971) (Friendly, J.); *Printers II, Inc. v. Prof'ls Publ'g Inc.*, 596 F.Supp. 1051, 1052 (S.D.N.Y.1984); *see generally* 9 C. WRIGHT, A. MILLER & F. ELLIOTT, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2320, at 94–95 (1971); 5 J. MOORE, J. LUCAS & J. WICKER, MOORE'S FEDERAL PRACTICE ¶¶ 38.39[2], 38.41 at 38–354 (2d ed.1985).

■ Obviously, every amended pleading contains some new material. However, it does not necessarily follow that the issues have changed. The term " 'issue' means something more than the evidence offered and the legal theories pursued." *Rosen v. Dick*, 639 F.2d 82, 94 (2d Cir.1980); *see also Clorox Co. v. Stanson Detergents, Inc.*, No. 84 Civ. 1236, 1985 WL 2309, at *1 (S.D.N.Y. Aug.12, 1985) ("[N]ew issues are not created simply by the assertion of a new legal theory. Rather, Rule 38 envisions an amendment that raises new facts, perhaps culled during discovery, . . . as a prerequisite to reactivation of the 10–day period during which a party has a right to make a jury demand.") (quoting *Rosen*, 639 F.2d at 94 and *Anaconda–Ericsson v. Am. Dist. Tel. Co.*, 101 F.R.D. 13, 15 (E.D.N.Y.1984)). The question is whether the amended pleading is significantly dif-

ferent from the original pleading; the mere addition of extra details or new legal arguments will not suffice. *Rosen*, 639 F.2d at 94–97.

The Second Circuit has stated that the word "issue" as it is used in Rule 38 "must be read together with its other uses in the Federal Rules of Civil Procedure." *Id.* at 94. For example, in FED. R. CIV. P. 56, the standard for summary judgment "asks whether there is any genuine issue as to any material fact." *Id.* "This standard clearly refers to the disputed conclusions which can be drawn from the evidence uncovered during discovery. It does not refer to purely legal questions or to the evidence itself." *Id.* Rule 38 similarly "suggests that the jury trial right extends only to disputed factual conclusions." *Id.*

■ Furthermore, "[w]hen the parties are the same before and after an amended pleading, it is difficult to show that a new issue has been raised. Usually, the initial jury demand (or waiver) will put the other parties on notice that a jury (or the court) will be trying 'all issues relating to [the] general area of dispute.' " *Id.* at 96 (quoting *Lanza*, 479 F.2d at 1310). Turning to the case at bar, careful consideration of the original and amended pleadings leads us to conclude that the Amended Answer did not raise new issues of fact and therefore did not revive defendants' right to demand a jury trial pursuant to Rule 38(b).

According to defendants, the six additional affirmative defenses set forth in the Amended Answer all relate to certain issues that were not entirely known to defendants or to this Court prior to the Second Circuit Decision.[3] (Defs. Mem.

---

3. The six additional affirmative defenses contained in defendants' Amended Answer are: (1) defendants' denial of WDS's application for a modification to its existing special permit was not a complete denial that would

trigger an analysis under RLUIPA; (2) defendants' denial of WDS's application for a modification to its existing special permit was not a complete denial and, therefore, not a violation of RLUIPA; (3) defendants' denial of

Supp. Mot. Jury Trial at 3–4.) Defendants maintain that the Second Circuit Decision raised the following new issues: (1) a RLUIPA claim may not exist if a land use denial is not a complete denial; and (2) a denial of a land use approval based on traffic or parking may, as a matter of fact, constitute a compelling governmental interest.[4] (Defs. Mem. Supp. Mot. Jury Trial at 3–4.)

We turn first to the issue of whether defendants' denial of WDS's application was a complete denial. As WDS correctly points out, the issue of the completeness of the denial was mentioned several times throughout the Amended Complaint. In paragraph 6, WDS alleges that "defendants chose to deny WDS's application entirely, clearly demonstrating that the denial of the application has nothing to do with traffic, parking or extra-curricular use of the property." (Am. Complt. ¶ 6; Pl. Mem. Opp. Mot. Jury Trial at 5.) Also, in paragraph 81, WDS alleges that defendants' resolution "purported to deny the Application in its entirety." (Am. Complt. ¶ 81; Pl. Mem. Opp. Mot. Jury Trial at 6.)

Further, in paragraph 84, WDS alleges that even if defendants were able to identify compelling government interests, defendants' denial of the "[a]pplication in its entirety is not the 'least restrictive means' of furthering such interests." (Am. Complt. ¶ 84.) Accordingly, the issue of the completeness of the denial raised by defendants in their Amended Answer not only involves the same "general area of dispute," but was specifically raised in the Amended Complaint and is therefore not a new issue sufficient to revive defendants' right to a jury trial. *Lanza*, 479 F.2d at 1310; *see also Sunenblick v. Harrell*, 145 F.R.D. 314, 317 (S.D.N.Y.1993) ("New issues sufficient to revive the right to a jury trial are not raised if the amended pleadings concern the same 'general area of dispute' as was raised in the original pleadings.").

Next we consider the issue of whether defendants' traffic and parking concerns constitute a compelling government interest. Our review of the original and amended pleadings leads us to conclude

---

WDS's application for a special permit modification does not substantially burden the free exercise of religion of WDS's students and/or faculty; (4) WDS's application for a special permit modification seeks to expand its secular activities and defendants' denial of such does not substantially burden the free exercise of religion of WDS's students and/or faculty; (5) defendants' denial of WDS's application for a special permit modification was based on compelling state interests, including but not limited to, traffic, safety, parking, aesthetics, and other environmental concerns; and (6) RLUIPA as applied by WDS and this Court is unconstitutional. (Am. Ans. ¶¶ 103–108.)

4. As a preliminary matter, we believe that defendants have misconstrued the Second Circuit Decision. First, the Second Circuit did not hold that a RLUIPA claim may not exist if a land use denial is not a complete denial. Rather, the Second Circuit concluded that this Court's finding that defendants' deni-

al of WDS's proposal was a complete denial was essential to our finding of a "substantial burden." *See Westchester Day Sch.*, 386 F.3d at 188–89. The court then concluded that because the record did not support our finding that there had been a complete denial, this Court's finding of a "substantial burden" should be vacated. *Id.* Second, the Second Circuit did not state, as defendants contend, that traffic concerns may constitute a compelling government interest. Rather, the court stated that it knew of no authority holding that traffic concerns could never be deemed a compelling government interest. *See id.* at 191 ("We know of no controlling authority ... holding that traffic problems are incapable of being deemed compelling."). Moreover, the court declined to rule on the issue stating, "[w]e make no ruling on whether the traffic concerns specified by the Board are compelling or on the broader issue of whether traffic concerns can ever represent a 'compelling concern.'" *Id.*

that this issue has always been central to the case. For example, in paragraph 4 of the Amended Complaint, WDS alleges that "while 'traffic' is generally not a 'compelling government interest,' it is especially not one here, where there is expected to be, at most, only a slight impact of traffic as a result of the project." (Am. Complt. ¶ 4.) Furthermore, defendants ignore the fact that we addressed the issues of defendants' traffic and parking concerns at length in the 2003 Order, which was based on the allegations contained in WDS's original and Amended Complaints and in defendants' Answer. *See Westchester Day Sch.*, 280 F.Supp.2d at 242 ("We turn now to consider the two major concerns raised by defendants in their opposing papers as reasons for denying WDS's Application— traffic and parking."). Accordingly, the issue of whether traffic and parking concerns constitute a compelling government interest is not a new issue sufficient to revive defendants' right to a jury trial under Rule 38(b). *See Lanza*, 479 F.2d at 1310; *see also Sunenblick*, 145 F.R.D. at 317.

Defendants' remaining affirmative defenses similarly fail to raise new issues of fact sufficient to revive their right to a jury trial. In their Seventh Affirmative Defense, defendants maintain that because WDS's special permit modification seeks to expand its secular activities, their denial of such expansion does not substantially burden the free exercise of religion of WDS's students and/or faculty.[5] (*Id.* ¶ 106.) In

their Ninth Affirmative Defense, defendants maintain that RLUIPA, as applied by WDS and this Court in the 2003 Order, is unconstitutional. These are not new factual issues; they are merely alternative legal contentions and more specific versions of defendants' First Affirmative Defense, contained in their original Answer.[6] From the time this case commenced it has been based on, *inter alia*, defendants' alleged violations of RLUIPA. These new affirmative defenses do not alter the character of the suit in any way; they are simply more detailed versions of defendants' original argument that WDS's RLUIPA claim is without merit.[7] Under Rule 38, a new issue must be "something more than the evidence offered and the legal theories pursued." *Rosen*, 639 F.2d at 94 ("[I]f the purportedly new issues are simply artful rephrasings of existing issues, the original waiver will be enforced, for the party has already considered and forfeited his right to a jury.") (quoting *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 819 (2d Cir.1977)) ("A legal theory incorporates issues of law which do not concern the jury, whereas only factual questions raise the possibility of a jury trial.").

The additional affirmative defenses contained in defendants' Amended Answer involve the same factual issues raised in WDS's Amended Complaint, and merely clarify defendants' original position with respect to WDS's RLUIPA claim. *See*

---

**5.** Similarly, defendants' Sixth Affirmative Defense provides that their denial of WDS's application for a special permit modification does not substantially burden the free exercise of religion of WDS's students and/or faculty. (Am. Ans. ¶ 105.)

**6.** Defendants' First Affirmative Defense provides that WDS's Complaint fails to state a claim upon which relief can be granted. (Ans. ¶ 100.)

**7.** Moreover, the Amended Complaint clearly indicates that WDS's proposed modifications would benefit both the school's religious and secular programs. (Am. Complt. ¶ 29 ("a library, a music room, and art room"); *Id.* ¶ 30 ("computer rooms and administrative offices"); ¶ 31 ("The renovations will include making both buildings handicap accessible, creating a second science laboratory …").)

*Lanza,* 479 F.2d at 1310. WDS's Amended Complaint gave defendants notice of the underlying facts and basic legal theories upon which they sought relief, and the character of the suit was not altered in any way by the amendments to defendants' Answer. Accordingly, defendants have not revived their right to a jury trial pursuant to Rule 38(b). We will now consider defendants' alternative request.

## II. Court Ordered Jury Trial—Rule 39(b)

In the alternative, defendants request that we exercise our discretion under Rule 39(b) to order a jury trial. Rule 39(b) provides in relevant part that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues." FED. R. CIV. P. 39(b). However, the Second Circuit in *Noonan* has strictly limited the court's discretion under Rule 39(b) to instances where the moving party has made a "showing beyond mere inadvertence." *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967) (holding that mere inadvertence in failing to make a timely jury demand is not sufficient to justify relief under Rule 39(b)).

█ In the case at bar, defendants have not shown that their failure to make a timely jury demand was the result of something more than mere inadvertence. *Id.* In fact, defendants do not even make this argument. Rather, defendants admit that they made a deliberate decision not to request a jury trial within ten days of the service of the original Answer because at that time defendants believed that this case was not one that would typically be heard by a jury. (Plunkett Reply Aff. ¶¶ 6, 21–23); *see Lastra v. Weil Gotshal & Manges LLP,* No. 03 Civ. 8756, 2005 WL 551996, at *3 (S.D.N.Y. Mar. 8, 2005.) (noting that plaintiffs were not entitled to relief under Rule 39(b) because they were unable to show that their failure to file a timely demand for jury trial was the result of more than mere inadvertence and the record reflected an intentional decision by the parties not to make a jury demand); *see also Sait Elecs. v. Schiebel,* 846 F.Supp. 17, 18 (S.D.N.Y.1994) (Conner, J.) (noting that defendant's failure to make a timely jury demand was not due to inadvertence, but to a deliberate decision followed by a change of mind as to whether a jury trial would be to defendant's advantage).

Defendants maintain that, as a result of the Second Circuit Decision, this case is now appropriate for a jury trial and they therefore made a jury demand immediately after filing their Amended Answer. (Defs. Mem. Supp. Mot. Jury Trial at 5.) Defendants essentially repeat their prior argument and contend that the jury demand was timely in light of the allegedly new issues raised in their Amended Answer. (*Id.* at 4–5.) However, this argument fails because, as discussed *supra,* in Part I, we have already determined that neither defendants' Amended Answer nor the Second Circuit Decision raised any new issues of fact that would revive their right to a jury trial. *See Clorox,* 1985 WL 2309, at *2 ("When no new issues are raised, however, as in this case, no such right [to a jury trial] arises.").

Although a jury trial, as compared to a bench trial, would impose a substantially lesser burden on this Court, and probably on the Court of Appeals as well, this is not one of the factors that courts have considered in exercising their discretion to grant a belated jury demand. *See* 8 MOORE'S FEDERAL PRACTICE § 39.31[5][a] (3d ed.2004). The only such factor arguably present here is whether the factual issues

are more appropriately determined by a judge or jury. In the present case, as much as we might prefer to escape the responsibility of deciding this emotionally charged case, we cannot in good conscience shift that burden to a jury on the basis that they are better qualified to resolve the factual issues than a judge.

Accordingly, because no new issues of fact have been raised and because defendants' failure to make a timely jury demand was the result of a deliberate decision that a jury trial would not be in defendants' best interest, followed by a change of mind after this Court granted WDS's motion for summary judgment, defendants' motion must be denied under both Rule 38(b) and Rule 39(b).[8]

## CONCLUSION

For the foregoing reasons, defendants' motion for leave to make a demand for a jury trial or, in the alternative, for the Court to order a jury trial is denied.

SO ORDERED.

---

8. We find some merit in defendants' argument that WDS would not necessarily be prejudiced if this case were to be tried before a jury because the parties did not know whether there would be a trial until the Second Circuit Decision was rendered and because defendants made their desire for a jury trial known promptly afterwards. However, the fact remains that defendants' failed to make a showing "beyond mere inadvertence." *Noonan*, 375 F.2d at 70. When this action commenced defendants decided that a jury demand was not to their advantage. To allow defendants to add a jury demand at this stage of the litigation is contrary to public policy and would encourage parties to go shopping for a sympathetic trier of fact. *See Clorox*, 1985 WL 2309, at *2 ("Public policy, as well, militates against allowing Clorox to add a jury demand at this late date.") (noting that to allow plaintiff to add a jury demand so late in the litigation would be against public policy where plaintiff thought it had a sympathetic trier of fact at the time it decided not to make a jury demand, but then switched its position after the court denied plaintiff's motion).